[No. S008853. Mar. 1, 1990.]

PAUL AMANTE, JR., Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

248

## COUNSEL

Paul Amante, Jr., in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and Stephen J. Strauss for Respondent.

## OPINION

**THE COURT.\***—We review today the recommendation of the Review Department of the State Bar Court (review department) that petitioner Paul Amante, Jr. (Amante), be suspended from the practice of law in the State of California for three years, that execution of the order for such suspension be stayed, and that Amante be placed on probation for said period of three years upon conditions including an actual suspension from the practice of law for the first six months of such probation. After considering all the evidence and petitioner's contentions, we adopt the recommendation of the review department.

---

\*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kennard, J., and Lucas (Campbell M.), J.†

†Presiding Justice, Court of Appeal, Second Appellate District, Division Five, assigned by the Chairperson of the Judicial Council.

## I.

## FACTS

Amante was admitted to the practice of law in California on December 3, 1982. Amante entered into a stipulation regarding the facts of his case at the December 2, 1987, hearing before the Hearing Department of the State Bar Court (hearing panel). The stipulation describes five matters involving professional misconduct by Amante in 1984 and 1985.

### A.   *The Kawile Matter.*

In July 1984, Amante was hired by Tito Kawile (Kawile) to file bankruptcy on his behalf. Amante received $260 from Kawile, representing $200 in advanced legal fees and $60 in advanced legal costs. Thereafter, Amante failed to perform legal services in this matter. In August and September of 1984, Kawile telephoned and left messages at Amante's office requesting that Amante call, but his calls were not returned. Amante subsequently relocated his office without informing Kawile or providing a forwarding address or telephone number. Amante misappropriated, to his own use and benefit, the $60 that he was holding for Kawile as advanced costs; he also failed to refund any portion of the $200 he was holding for Kawile as advanced fees.

### B.   *The Clark Matter.*

In July 1984, Amante was hired by Ron Clark (Clark) to file bankruptcy on his behalf. Although the stipulation contains a $5 discrepancy, it appears that Clark paid Amante approximately $230, of which $60 represented advanced legal costs and the balance advanced legal fees. Thereafter, Amante failed to perform legal services in this matter. In August and September 1984, Clark repeatedly telephoned and left messages at Amante's office, but his calls were not returned. Amante misappropriated to his own use and benefit the $60 that he was holding for Clark as advanced costs, and failed to refund any of the funds he was holding for Clark as advanced fees.

### C.   *The Carter Matter.*

In January 1984, Amante was hired by Gregg Carter (Carter) to file a marital dissolution on his behalf. Amante received $300 from Carter, representing advanced legal fees. From February to May 1984 Carter repeatedly telephoned and left messages at Amante's office, but his calls were not returned. On April 20, 1984, Amante filed a petition for dissolution of

marriage in Orange County Superior Court on behalf of Carter, but thereafter failed to perform legal services in this matter. Only when Carter was finally successful in contacting Amante in April 1984 did Amante advise Carter that he had filed the petition for dissolution. At oral argument, Amante acknowledged he had not, at the time he was notified by the State Bar of Carter's complaint, refunded any of the unearned fees to Carter.

### D. *The City of Huntington Beach Matter.*

In May 1984, Amante maintained a clients' trust account at Bank of America, Huntington Beach branch. Amante kept some of his own funds in this account, and commingled his own funds with funds he was holding on behalf of his clients. In May 1984, Amante advanced $4.50 in costs to a client by writing a check (for a copy of a police report) payable to the City of Huntington Beach in that amount, which was drawn on his clients' trust account. Amante knew, or should have known, that there were insufficient funds in the clients' trust account to redeem that check, which was subsequently dishonored by the bank. Not until March 15, 1985, did Amante pay $4.50 to the City of Huntington Beach to replace the dishonored check.

### E. *The Orange County Superior Court Matter.*

In May 1984, Amante again advanced costs to a client by writing a check (in the amount of $113) drawn on his clients' trust account when he knew or should have known that there were insufficient funds in the account to redeem that check. This check was payable to Orange County Superior Court and represented filing fees in connection with a petition for dissolution of marriage. The check was dishonored by the bank, and the Clerk of the Orange County Superior Court subsequently voided the filing of the petition for failure to pay filing fees.

### F. *Mitigation and Aggravation.*

The hearing panel found in mitigation that Amante had no prior record of discipline, that he was remorseful and cooperated fully with the State Bar investigation of his case, that he ultimately repaid the sums of money he owed in connection with the Kawile, Clark, Carter, and City of Huntington Beach matters, that he had reorganized his practice and especially its internal accounting systems so as to demonstrate his present ability to cope with the requirements of running a law practice, that the State Bar excessively delayed the conduct of disciplinary proceedings, and that there was no evidence of his misconduct having harmed the public. The hearing panel found no evidence in aggravation.

The review department found that the fact that Amante had committed multiple acts of professional misconduct shortly after his admission to practice law was a factor in aggravation. The review department also declined to consider as factors in mitigation that Amante had no prior record of discipline, that the State Bar excessively delayed the conduct of disciplinary proceedings, and that Amante was remorseful and had taken steps to rectify the shortcomings of his financial practices.

## II.

### State Bar Court Proceedings

The hearing panel recommended that Amante be suspended from the practice of law for three months, that he be required to take and pass the Professional Responsibility Examination, and that he be required to comply with rule 955 of the California Rules of Court.

The review department recommended, on a vote of ten to four, that Amante be suspended for three years, that execution of the suspension order be stayed, and that Amante be placed on three years' probation upon conditions which include actual suspension from practice for the first six months of his probation, the filing of periodic reports with the State Bar Court, and certification by an accountant that he has maintained records which distinguish his own moneys from those held on behalf of his clients. Four members of the review department dissented on the ground that the degree of discipline recommended was excessive.

## III.

### Discussion

Amante does not dispute his culpability of professional misconduct as described above. ▆▆ His sole contention is that the discipline recommended by the review department is excessive in light of the stipulated facts and the evidence in aggravation and mitigation. Amante urges us to impose only a stayed suspension from practice with probation upon conditions including monitoring of his financial practices, outside trust accounting, and passage of the Professional Responsibility Examination.

▆▆ While we must exercise independent judgment in determining the appropriate level of discipline to be imposed in any given case (*Greenbaum v. State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]), we give great weight to the disciplinary recommendations of the review

department (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the factual findings of the hearing panel (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]). The petitioner bears the burden of showing that the review department's recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c); *Weber* v. *State Bar* (1988) 47 Cal.3d 492, 501 [253 Cal.Rptr. 573, 764 P.2d 701].)

We consider Amante's major contentions seriatim.

■ Amante contends firstly that his youth and inexperience in the legal profession, which caused him to enter sole practice disorganized, undercapitalized, and understaffed, should be considered as a significant factor in mitigation. Within a year of his admission to the bar, Amante left the litigation firm where he had begun practice. A month later, he began a sole practice with inadequate capital and no support staff. It was during this period of sole practice that Amante's acts of professional misconduct occurred. He claims that his youth and inexperience were the real causes of his misconduct, and that the record, while demonstrating a lack of diligence and organization, shows he did not intend to defraud or deceive his clients. Amante also asserts that he recognized, before any State Bar action, that it had been a mistake for him to have ventured into sole practice so early in his career, and that for this reason he voluntarily returned to supervised work as an associate in a law firm. (Amante has subsequently returned to sole practice.)

We agree with the State Bar that youth and inexperience are irrelevant where an attorney has misappropriated clients' funds. After all, many young and inexperienced attorneys in this state, whatever difficulties they may understandably encounter, never resort to taking their clients' money.

■ Amante correctly notes that we have held that financial difficulties and related personal pressures may be considered in mitigation of discipline for professional misconduct. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747-748 [111 Cal.Rptr. 905, 518 P.2d 337]; *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230].)

In *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, Attorney Sidney Bradpiece (Bradpiece), who had practiced for 10 years without disciplinary incident, deposited a $15,000 personal injury settlement check, most of which represented funds owed to his client, into his personal account. He subsequently used the funds for his own benefit. We found in mitigation that his financial affairs were in a chaotic state during several years preceding this misconduct, partly as a result of his confessed inability to handle

checking accounts. (*Id.*, at pp. 744-748.) In these circumstances, his financial situation rapidly deteriorated. At one point, in an attempt to conceal from his wife the true state of his finances (out of fear that her learning the truth would destroy his marriage), Bradpiece succumbed to the temptation to avail himself of his client's settlement. (*Id.* at p. 747.) After complaints were filed, but before State Bar proceedings began, Bradpiece made full restitution. (*Id.*, at p. 748.) We considered Bradpiece's financial and domestic difficulties as a factor in mitigation, noting that he had "sought and received psychiatric help in resolving these problems, and his prognosis appears favorable." (*Id.* at p. 747.)

The record does not demonstrate that Amante suffered from such extreme personal pressures related to his financial difficulties that his misconduct can reasonably be understood as a desperate response to such pressures. Whereas Bradpiece presented the testimony of his psychiatrist to the effect that his misconduct was in response to economic and domestic problems for which he had required and received successful treatment (*Bradpiece, supra,* 10 Cal.3d at p. 746), Amante offered only his own testimony that financial pressures had contributed to his misconduct. As the State Bar correctly observes, the record demonstrates that during the time of Amante's alleged financial difficulties, his practice did not utterly deteriorate. Rather, Amante was able to handle a pro bono case and represent a number of other clients successfully.

The fact that Amante was experiencing financial difficulties during the period of his misconduct suggests that he should have been especially careful with the handling of his clients' funds during this period, not less careful. (*Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 166 [154 Cal.Rptr. 752, 593 P.2d 613].)

Moreover, Amante's voluntary return to supervised practice was not apparently motivated by any concern for the cost and inconvenience that his unsupervised misconduct could cause his clients. Upon abandonment of his initial sole practice, Amante failed to attend to the needs of his clients. He did not return their telephone calls or advise them of his forwarding address. He made no effort to resolve the matters for which he had been engaged by them. Rather, in returning to larger firm practice, Amante appears to have been motivated simply by the financial pressures upon himself and his personal needs. As we have noted, these pressures and needs cannot, under the circumstances, be considered a significant factor in mitigation.

Amante contends secondly that his lack of any record of discipline prior, or subsequent, to the initiation of the present proceedings should be

considered as a significant factor in mitigation. We cannot agree. It is true that lack of a prior disciplinary record over many years of practice may be considered as a factor in mitigation where the present misconduct is not deemed especially serious. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(e)(i); see also *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 658 [247 Cal.Rptr. 608, 754 P.2d 1104]; cf. *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].) Amante's misconduct began approximately one year after his admission to the bar. Because Amante was in practice for such a brief period before he engaged in professional misconduct, his lack of a prior disciplinary record cannot weigh significantly in mitigation. (*In re Demergian* (1989) 48 Cal.3d 284, 294-295 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Kelly* v. *State Bar, supra,* 45 Cal.3d at p. 658; *Smith* v. *State Bar, supra,* 38 Cal.3d at p. 540.)

Nor can Amante's misconduct be deemed less than serious. We are persuaded to follow the review department in finding that Amante's lack of a prior disciplinary record over a brief period of practice has negligible weight in mitigation. Rather, we are of the opinion, in accordance with the review department, that the fact Amante engaged in misconduct so soon after his admission to the bar is cause for heightened, not decreased, concern.

▆▆ Amante correctly points out that during the period—approximately three years—between his professional misconduct and the December 1987 hearing in his case, there were no further complaints lodged about his professional conduct. This period of successful practice, though brief, is entitled to some weight in mitigation. (*In re Demergian, supra,* 48 Cal.3d 284, 296 [seventeen months without complaint]; *Bradpiece, supra,* 10 Cal.3d at p. 747 [four years of successful practice after misconduct]; *In re Higbie* (1972) 6 Cal.3d 562, 573-574 [99 Cal.Rptr. 865, 493 P.2d 97] [approximately two years of successful practice after misconduct].) Nevertheless, we do not find this fact to weigh so heavily in mitigation as to warrant a departure from the recommendation of the review department in this case.

▆▆ Amante contends thirdly that his handling of a bankruptcy matter for an indigent client on a pro bono basis during the period in which his misconduct occurred should be considered as a significant factor in mitigation. The single matter to which Amante refers does not demonstrate the kind of "zeal in undertaking pro bono work" that we have recognized as perhaps constituting a mitigating factor. (See, e.g., *Rose* v. *State Bar* (1989) 49 Cal.3d 646, 665-666 [262 Cal.Rptr. 702, 779 P.2d 761] [numerous pro bono actions seeking to advance the rights of handicapped people, lecturer for the California Continuing Education of the Bar, guest lecturer at Loyola of Los Angeles School of Law, recipient of certificate for outstanding contributions, etc.]; *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 602 [247

Cal.Rptr. 599, 754 P.2d 1096].) Nor does the record suggest that Amante's pro bono activities were so extensive as to significantly impinge on his ability to attend properly to the interests of his clients. To the contrary, he was able to handle matters for other clients during the period of his misconduct. Amante's willingness to handle a case on a pro bono basis for an indigent client is certainly to be commended, but under the circumstances it cannot be considered a significant factor in mitigation.

▪ Amante contends lastly that the fact that the State Bar waited until 1987 to begin the present proceedings should be regarded as an excessive delay and considered as a significant factor in mitigation. Amante filed his written response to the initial letter of inquiry made by the State Bar Office of Investigations in March 1985. The State Bar issued its notice to show cause in January 1987—22 months later. The hearing panel found this delay to be a factor in mitigation, but the review department deleted this finding.

Standard 1.2(e)(ix) of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) provides that excessive delay in conducting disciplinary proceedings which is not attributable to the member and which prejudices the member is a mitigating circumstance. The question whether delay constitutes a factor in mitigation must be determined on a case-by-case basis. (*Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 431-432 [121 Cal.Rptr. 467, 535 P.2d 331].)

Although it is true that Amante did not cause the delay in his case, the record does not reflect that Amante was prejudiced by the fact that the State Bar began the present proceedings 22 months after Amante's initial letter. Amante complains that he may be forced to lay off his current employees if he is actually suspended from practice. But the fact that the imposition of discipline will create difficulties for an attorney in conducting a future law practice is not the kind of prejudice that must be shown in connection with a delay in instituting proceedings for such delay to be considered a factor in mitigation. (See *Caldwell* v. *State Bar* (1975) 13 Cal.3d 488, 496, fn. 9 [119 Cal.Rptr. 217, 531 P.2d 785].) Amante has not shown that he has been hampered in any way in the preparation or presentation of his defense by the 22-month wait involved in his case. Under these circumstances, we do not find that excessive delay in conducting Amante's disciplinary proceedings is a significant factor in mitigation.

▪ Having considered the record and Amante's contentions, and having weighed the mitigating and aggravating circumstances, we adopt the disciplinary recommendation of the review department.

## IV.

### DISPOSITION

It is ordered that Paul Amante, Jr., be suspended from the practice of law in the State of California for a period of three years. The execution of the order for such suspension is stayed, and Amante is placed on probation for said period of three years upon the following conditions: 1. During the first six months of Amante's period of probation, he shall be suspended from the practice of law in the State of California.

2. During the period of probation, Amante shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California.

3. During the period of probation, Amante shall report not later than January 10, April 10, July 10, and October 10 of each year or part thereof during which the probation is in effect, in writing to the Office of the Clerk, State Bar Court, Los Angeles. Each of these reports shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, he shall file said report on the due date next following the due date after said effective date), and such reports shall state: (a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation;

(b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period;

(c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph certifying to the matters set forth in subparagraph (b) above.

4. If Amante is in possession of clients' funds, or has come into possession thereof during the period covered by the report, he shall file with each report required by these conditions of probation a certificate from a certified public accountant or public accountant certifying:

(a) that Amante has kept and maintained such books or other permanent records in connection with his practice as are necessary to show and distinguish between:

(i) money received for the account of a client and money received for Amante's own account;

(ii) money paid to or on behalf of a client and money paid for Amante's own account; and

(iii) the amount of money held in trust for each client;

(b) that Amante has maintained a bank account in a bank authorized to do business in the State of California at a branch within the State of California and that such account is designated as a "trust account" or "clients' funds account";

(c) that Amante has maintained a permanent record showing:

(i) a statement of all trust account transactions sufficient to identify the client in whose behalf the transaction occurred and the date and amount thereof;

(ii) monthly total balances held in a bank account or bank accounts designated "trust account(s)" or "clients' funds account(s)" as appears in monthly bank statements of said account(s);

(iii) monthly listings showing the amount of trust money held for each client and identifying each client for whom trust money is held; and

(iv) monthly reconciliations of any differences as may exist between said monthly total balances and said monthly listings, together with reasons for any differences;

(d) that Amante has maintained a listing or other permanent record showing all specifically identified property held in trust for clients.

5. Amante shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. He shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, Amante shall furnish such reports concerning his compliance as may be requested by his probation monitor referee. Amante shall cooperate fully with the probation monitor referee to enable him or her to discharge his or her duties pursuant to rule 611, Rules of Procedure of the State Bar.

6. Within 30 days from the date Amante receives notice of the assignment of his probation monitor referee, he shall file with said probation

monitor referee an office organization plan that shall outline, among other items that may be requested by the probation monitor referee: (a) a calendaring system for all deadlines;

(b) a time allocation plan;

(c) a deadline tracking system;

(d) a method for handling all mail;

(e) a method of handling incoming telephone calls;

(f) a system for periodic review of all open files;

(g) a billing system; and

(h) a "backup" system for calendaring deadlines.

7. If for any reason the probation monitor referee determines that the office organization plan submitted by Amante is incomplete or insufficient, Amante shall, pursuant to the probation monitor referee's instructions and at the direction and discretion of the probation monitor referee, revise the office organization plan until it meets the approval of the probation monitor referee.

8. During the period of probation, Amante shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, his current office or other address for State Bar purposes and all other information required by that section. Amante shall report to the membership records office of the State Bar all changes of information as prescribed by Business and Professions Code section 6002.1.

9. Except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, Amante shall answer fully, promptly and truthfully to the presiding referee of the State Bar Court, his designee or to any probation monitor referee assigned under these conditions of probation at Amante's office or an office of the State Bar (provided, however, that nothing herein shall prohibit Amante and the presiding referee, designee or probation monitor referee from fixing another place by agreement) any inquiry or inquiries directed to him personally or in writing by said presiding referee, designee, or probation monitor referee relating to whether Amante is complying or has complied with these terms of probation.

10. The period of probation shall commence as of the date on which the order of this court becomes effective.

11. At the expiration of said probation period, if he has complied with the terms of probation, the order of this court suspending Amante from the practice of law for a period of three years shall be satisfied and the suspension shall be terminated.

It is further ordered that Amante shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year from the date upon which the order of this court becomes effective. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].)

It is further ordered that Amante shall comply with the provisions of rule 955(a) of the California Rules of Court within 30 days of the effective date of the order of this court and shall file the affidavit with the clerk of this court provided for in rule 955(c) of the California Rules of Court within 40 days of the effective date of the order of this court. Failure to comply with this provision may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).)

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)