[No. S013299. Oct. 25, 1990.]

ALAN C. SUGARMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

David A. Clare for Petitioner.

Diane C. Yu, Richard J. Zanassi, Colin P. Wong, Lawrence C. Yee, Sr., and Allen Blumenthal for Respondent.

OPINION

THE COURT.—We review the recommendation of the Review Department of the State Bar Court that petitioner Alan C. Sugarman be suspended from the practice of law for three years, that execution of the order for such suspension be stayed, and that petitioner be placed on probation for three years on conditions including an actual suspension from the practice of law for the first year of probation. After considering all the evidence and petitioner's contentions, we adopt the recommendation of the review department.

## I. FINDINGS OF FACT

Petitioner was admitted to the practice of law on December 3, 1982. In November 1987 the State Bar issued an order to show cause charging petitioner with two counts of professional misconduct. Petitioner has no prior record of discipline.

### A. Count 1: The Bagdasarian Matter

In June 1984, petitioner was retained by the California Sundance Corporation (Sundance) to represent the company in assorted legal matters. At that time, there were two principals of Sundance: Bernard Mass and Irving Rosen, an attorney.[1] Sundance failed to pay petitioner for the legal work he performed on behalf of the corporation. Thereafter, in 1985, Hrant Bagdasarian and his son Matthew also became principals, with the senior Bagdasarian holding the office of president. Petitioner represented Bagdasarian in his personal legal matters.

---

[1] The term "principal," as used here, means one who owned a percentage of Sundance, although no stock was ever issued.

Bernard Mass testified at the hearings as follows. In October 1985, Sundance acquired the right to purchase a canning company. After Sundance requested petitioner to perform the relevant legal work for the purchase, petitioner met with the corporation's board of directors, including Mass and Bagdasarian. Petitioner told the board he could not afford to perform any future work for Sundance unless he was paid the fees he was owed. The board informed petitioner Sundance would be paying him at least $30,000 in 30 days. Petitioner responded that because of his own financial obligations he was unable to wait for the money. Thereafter, Bagdasarian said he was willing to loan petitioner one-half of the $30,000 from his personal funds, and that petitioner could repay in installments. Petitioner agreed on the condition that he give Bagdasarian a note to make it "a real transaction." According to Mass, petitioner and Bagdasarian agreed that petitioner would repay one-half of the loan or $7,500 when he received $30,000 in fees from Sundance and the remainder of the loan when he received an additional $20,000 from the corporation.

Bagdasarian testified that petitioner had handled several personal legal matters for him over the years. When petitioner told him he had family problems and needed financial help, Bagdasarian loaned petitioner $15,000 in exchange for a promissory note. After executing the note, petitioner filed for bankruptcy under chapter 11 of the Bankruptcy Code. He listed Bagdasarian as a creditor.

Bagdasarian also testified that he emigrated from Germany in 1938. Before entering the United States, he did not speak English, and today speaks only broken English. He has no training in legal principles or loan transactions. Petitioner never explained to Bagdasarian that he would not have to repay the loan unless the fees owed by Sundance were paid. According to Bagdasarian, petitioner failed to discuss the difference between a secured note and an unsecured one, nor did petitioner offer any collateral for securing repayment of the loan.

Petitioner conceded that he did not advise Bagdasarian to review the terms and conditions of the note, nor did he advise Bagdasarian to seek the advice of independent counsel prior to making the personal loan.

Petitioner also testified, however, that he received the $15,000 from Bagdasarian as an advance on fees owed by Sundance for legal work performed on behalf of the corporation. According to petitioner, Sundance owed him approximately $50,000 in fees, and although the corporation had issued over $22,000 in checks to petitioner as fees, those checks were drafted on insufficient funds in Sundance's account.

Count 1 of the order to show cause charged petitioner with violating Rules of Professional Conduct, former rule 5-101, which prohibits an attorney from acquiring an interest adverse to a client unless the terms are fully disclosed, fair and reasonable, and the client has consented in writing after an opportunity to consult independent counsel. Count 1 also charged petitioner with violating his oath and duties as an attorney under Business and Professions Code sections 6068, subdivision (a) (hereafter § 6068(a)) (duty to obey federal and state Constitutions and laws) and 6103 (oath and duties as an attorney).[2]

The hearing panel dismissed count 1 after determining there was insufficient evidence petitioner had borrowed the money from Bagdasarian in willful violation of former rule 5-101, or sections 6068(a) and 6103.

### B. *Count 2: The Krage Matter*

In December 1982, National Legal Network hired petitioner to represent Arthur and Verna Krage in a collection action against Fortune Investments, Inc. (hereafter Fortune). In November 1984, petitioner assisted the Krages in settling the matter. The terms of the settlement required Fortune to make monthly payments in the amount of $750 through petitioner's office. After Fortune failed to make payments pursuant to the settlement agreement, petitioner procured an entry of judgment against Fortune, receiving $15,317 on behalf of the Krages. The Krages did not receive their money until November 1985, one month after the State Bar sent petitioner a letter requesting certain documents pertaining to the client file and inquiring as to why the Krages had not been paid.

Count 2 of the order to show cause charged petitioner with willful violation of former rules 8-101(A) (commingling funds), 8-101(B)(1) (failing to promptly notify clients of receipt of their funds), 8-101(B)(3) (neglecting to maintain complete record of client funds), and 8-101(B)(4) (failing to promptly deliver the funds to the clients once received). Petitioner was also charged with violating his oath and duties as an attorney (§§ 6068 & 6103) and with committing an act of moral turpitude (§ 6106).

At the State Bar hearing, petitioner acknowledged he had misappropriated the Krages' money. He claimed, however, that the misconduct was unintentional because he did not learn until late July 1985 that the Krages' money had been deposited in his client trust account. He blamed his ignorance, in part, on his secretary, who deposited the money in the trust

---

[2]Unless otherwise indicated, all statutory references are to the Business and Professions Code; unless otherwise indicated, all rule citations are to the Rules of Professional Conduct in effect prior to May 27, 1989, the operative date of the new Rules of Professional Conduct.

account without his knowledge. He claimed he fired the employee once he discovered she was depositing checks without his knowledge. He then hired an accounting firm to maintain his records and client trust account.

Petitioner conceded he was accountable for the misappropriation of trust funds. Petitioner's counsel stated: "Mr. Sugarman was certainly responsible for the situation. His conduct was indeed culpable and we have never argued anything else, because an attorney has virtually strict liability with respect to his trust account."

The hearing panel concluded petitioner's misconduct as set forth in count 2 did not amount to willful misconduct as stated in the order to show cause; rather, the hearing panel determined the misappropriation was the result of petitioner's gross negligence. It concluded that petitioner had violated the Rules of Professional Conduct as otherwise noted in the order to show cause, and found petitioner's failure to conform to the above rules violated sections 6068, 6103, and 6106.

### C. *Mitigating Factors*

The hearing panel found petitioner presented clear and convincing evidence that at the time he misappropriated his clients' funds his secretary had failed to inform him of the status of the trust account. Petitioner fired the employee once he discovered her failure to properly advise him of the status of the account, and promptly hired an accountant to manage the account. Since that time, petitioner has had no difficulty in maintaining his client trust account pursuant to the Rules of Professional Conduct.

The hearing panel also found in mitigation: (i) petitioner had no prior record of discipline, (ii) at the time of the misappropriation he was engaged in his own divorce litigation, (iii) he had twice moved his law office and, (iv) he ultimately made restitution to the Krages.

### D. *Aggravating Factors*

The hearing panel found in aggravation that petitioner failed to repay the Krages until after they had filed their grievance with the State Bar and that the delay in payment significantly harmed the Krages.

### E. *Discipline*

In deciding the appropriate level of discipline, the hearing panel observed that under the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V; all further references to standards are

to these provisions), adopted by this court in September 1989 as guidelines for imposing discipline in State Bar matters, the recommended discipline for the willful misappropriation of a client's property, absent compelling mitigating circumstances, is disbarment. (Std. 2.2 [recommending disbarment for offenses involving entrusted funds of property].) In cases involving such mitigation, standard 2.2 maintains that "the discipline shall not be less than a one-year actual suspension." After considering the aggravating and mitigating circumstances, and concluding that the Krage misappropriation was not willful, but resulted instead from petitioner's gross negligence, the hearing panel recommended petitioner be placed on probation for three years with several conditions, including a one-year actual suspension.

The State Bar examiner and petitioner both requested review of the hearing panel decision before the review department. (Rule 450, Rules Proc. of State Bar.) The review department disagreed with the hearing panel's conclusions as to count 1 and concluded that petitioner's borrowing $15,000 from Bagdasarian's personal account violated former rule 5-101 because the transaction created a pecuniary interest adverse to the client. The review department adopted substantially the hearing panel's findings and conclusions as to count 2, concluding that petitioner's conduct in misappropriating his clients' funds, while not intentional, did amount to gross negligence. Nonetheless, even with these additional findings, the review department substantially adopted the hearing panel's recommended discipline, with the modification that petitioner comply with the provisions of rule 955, California Rules of Court. The six dissenting members of the review department believed that the level of discipline was insufficient in view of the record, and suggested that under the circumstances, petitioner deserved not less than a two-year actual suspension.

## II. DISCUSSION

Petitioner raises a number of objections to the State Bar's findings. As we explain, petitioner's claims lack merit. We believe the review department recommended the correct discipline under the facts.

### A. *Former Rule 5-101*

Petitioner first contends the review department's finding of culpability in the Bagdasarian matter should be set aside. He asserts the hearing panel was in a better position to decide whether Bagdasarian was telling the truth about the $15,000 transaction because it heard testimonial evidence and could better evaluate conflicting statements after observing the demeanor of the witnesses.

Petitioner notes that at the time the loan was made, Sundance owed him over $50,000 for services rendered. As noted above, Bagdasarian offered to loan petitioner money from his personal account, while assuring petitioner that Sundance would receive a large sum of money within 30 to 60 days and would pay petitioner at least $30,000 in fees. Petitioner asserted that Bagdasarian did not request petitioner's signature on a promissory note. Instead, petitioner claims, it was his idea to sign a note in order to make a record of the transaction and to accommodate Bagdasarian's desire *to conceal the* personal payment from his wife. According to petitioner, Sundance never received any sum of money as promised and he was never paid, despite assurances to the contrary.

■ The scope of our review is well established. The recommendation of the State Bar Court, while not binding on this court, is entitled to great weight. (*In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765]; *Ainsworth* v. *State Bar* (1988) 46 Cal.3d 1218, 1233 [252 Cal.Rptr. 267, 762 P.2d 431].) " '[W]e are reluctant to reverse the decision of the local administrative committee, which was in a better position to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony' " (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 793-794 [94 Cal.Rptr. 825, 484 P.2d 993]), and the "burden is on petitioner to show that the findings are not supported by the evidence or that the recommendation is erroneous." (*Ibid.*; see *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 121 [202 Cal.Rptr. 349, 680 P.2d 82].) To meet his burden, petitioner must demonstrate that the charges of misconduct are not sustained by clear and convincing evidence. (*Chefsky, supra,* 36 Cal.3d at p. 121.)

■ Petitioner has failed to carry this burden. In our view, the review department correctly determined that the $15,000 was received from Bagdasarian as a loan. The record shows petitioner recognized he was to return the money to Bagdasarian, and he listed Bagdasarian as a creditor in his bankruptcy proceeding. Even were we to accept petitioner's claim that the money was actually a payment for fees, he still would have violated former rule 5-101, which provided that a member of the State Bar shall not acquire an interest adverse to the client without first allowing the client an opportunity to seek independent legal advice. (*Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 600-601 [247 Cal.Rptr. 599, 754 P.2d 1096]). As we observed in *Hawk*, when a client puts his "assets in the hands of the attorney," the provisions of former rule 5-101 must apply.

We have expressly held that a client's loan to an attorney in lieu of attorney fees invokes the provisions of former rule 5-101. (See *Ritter* v. *State Bar* (1985) 40 Cal.3d 595, 602 [221 Cal.Rptr. 134, 709 P.2d 1303]; see also

*Lewis* v. *State Bar* (1981) 28 Cal.3d 683, 688 [170 Cal.Rptr. 634, 621 P.2d 258].) In *Ritter*, we rejected an attorney's argument that the failure to advise clients to seek independent counsel is a mere technical violation. Instead, we emphasized, " 'All dealings between an attorney and his client that are beneficial to the attorney will be closely scrutinized with the utmost strictness for any unfairness.' " (*Ritter, supra,* 40 Cal.3d at p. 602, quoting *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329].) Because there is no evidence petitioner complied with former rule 5-101 when he borrowed the $15,000 from Bagdasarian's personal funds, we conclude the evidence supports the review department's finding that count 1 should be sustained.

### B. *Sections 6103 and 6068*

As noted above, the review department concluded that petitioner's violations of the Rules of Professional Conduct also violated (as to counts 1 and 2) sections 6068(a) (duty to support the Constitution and laws of the state), 6103 (violation of oath or duties), and (as to count 2 only) 6106 (commission of acts of moral turpitude). Petitioner contends the review department erroneously determined sections 6068(a) and 6103 were applicable to his case and that neither count points to any misconduct enumerated under either section.[3] He relies on *Baker* v. *State Bar* (1989) 49 Cal.3d 804 [263 Cal.Rptr. 798, 781 P.2d 1344] to support his contention.

In *Baker* v. *State Bar, supra,* the State Bar Court found that the petitioner had committed 10 counts of misconduct, including the willful misappropriation of clients' funds, and that in each instance he had also violated sections 6068 and 6103. As to section 6068, *Baker* concluded that the State Bar had failed to specify which subdivision applied to petitioner's misconduct. (49 Cal.3d 804, 815.) Moreover, *Baker* found that the "only duty specified therein that petitioner's conduct arguably violated in each of the 10 counts was that set out in subdivision (m)," requiring an attorney to respond promptly to client inquiries regarding the status of their cases. (*Id.* at pp. 814-815.) *Baker* determined that subdivision (m) was inapplicable to the charged misconduct because it was not added to section 6068 until 1986, three years after the misconduct occurred. *Baker* also held that petitioner's misconduct did not violate section 6103 because that provision "does not define a duty or obligation of an attorney, but provides only that violation of his oath or duties defined elsewhere is a ground for discipline." (49 Cal.3d at p. 815.)

As in *Baker*, we do not find that petitioner's misconduct amounted to a willful violation of his duty to "support the Constitution and laws of the

---

[3] Petitioner impliedly concedes that the misconduct charged in count 2 (misappropriation of client funds) was an act involving moral turpitude (§ 6106).

United States and of this State." (§ 6068(a).) Nor do we find that his misconduct amounted to willful violation of the "duties" of section 6103, because that section defines no duties. Moreover, as stated in *Baker,* "we are constrained to call to the attention of the State Bar Court the importance of identifying with specificity both the rule or statutory provision that underlies each charge and the manner in which the conduct allegedly violated that rule or statutory provision. While petitioner here does not complain of any due process violation in lack of notice, this specificity is also essential to meaningful review of the recommendation of the State Bar Court." (*Baker v. State Bar, supra,* 49 Cal.3d at p. 816.)

## C. *Degree of Discipline*

■ Petitioner next claims that because his misappropriation of the Krage funds did not involve the intent to defraud, the recommended discipline involving a one-year actual suspension is excessive and a period of probation without actual suspension is appropriate. He relies on *Waysman v. State Bar* (1986) 41 Cal.3d 452 [224 Cal.Rptr. 101, 714 P.2d 1239] to support his claim.

In *Waysman v. State Bar, supra,* 41 Cal.3d 452, the petitioner was charged with a single incident of misconduct: commingling and misappropriating $24,000 in client funds. We adopted the recommendation of the review department placing the petitioner on probation for one year on conditions that included no actual suspension, but required, among other things, that the petitioner abstain from alcohol and make restitution. In so doing, we noted that the "petitioner committed a single offense which for several reasons appears to have been aberrant behavior, atypical of his performance during his career both before and after the incident," and that at the time of the misconduct, the petitioner was "struggling with both personal difficulties and an unusual alcohol problem." (*Id.* at p. 459.)

To impose discipline consistent with the goal of protecting the public, we "balance all relevant factors including mitigating circumstances on a case-to-case basis." (*Arden v. State Bar* (1987) 43 Cal.3d 713, 726 [239 Cal.Rptr. 68, 739 P.2d 1236, 79 A.L.R.4th 559].) Although there is no fixed formula to determine appropriate discipline, we have repeatedly stated, and the rules provide, that when an attorney misappropriates funds, disbarment is appropriate absent compelling mitigating circumstances. (Std. 2.2; *Silva-Vidor v. State Bar* (1989) 49 Cal.3d 1071, 1078 [264 Cal.Rptr. 439, 782 P.2d 680]; *Waysman v. State Bar, supra,* 41 Cal.3d at p. 457.)

In the present case, petitioner's two acts of misconduct violated former rule 5-101 (the Bagdasarian matter), former rule 8-101 and section 6106

(the Krage matter). Although we agree with the review department that petitioner's personal problems and his willingness to hire an accounting firm to monitor his finances carry some mitigating weight, we do not find petitioner suffered from such extreme financial pressures that his two acts of misconduct can reasonably be understood as a desperate response to such pressure. (*Amante* v. *State Bar* (1990) 50 Cal.3d 247, 255 [266 Cal.Rptr. 648, 786 P.2d 375].) Nonetheless, in light of petitioner's family problems, and in view of his good faith efforts to improve his office procedures, we believe that disbarment is inappropriate. In our view, discipline of one year's actual suspension as recommended is sufficient under the circumstances here. (*Silva-Vidor* v. *State Bar, supra,* 49 Cal.3d at p. 1078.)

## III. CONCLUSION

After an independent review, we believe the review department's findings of fact and conclusions of law are sound and adopt them as our own, except for the findings that petitioner violated sections 6068(a) and 6103. Accordingly, we order that: (i) petitioner Alan C. Sugarman be suspended from the practice of law for three years; (ii) execution of the suspension be stayed; (iii) petitioner be placed on probation for a period of three years, including actual suspension for the first year of probation; and (iv) he comply with all other conditions of probation as set forth in the review department's decision filed August 11, 1989.

We further order that petitioner pass the Professional Responsibility Examination within one year of the effective date of this order (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891 [126 Cal.Rptr. 793, 544 P.2d 929]), and that he comply with subdivisions (a) and (c) of rule 955, California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order.

Our order shall be effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)