[No. S014716. June 6, 1991.]

SAMUEL LIPSON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

David A. Clare for Petitioner.

Diane C. Yu., Richard J. Zanassi and Teri Katz for Respondent.

OPINION

**THE COURT.**—In this proceeding we consider the recommendation of the Review Department of the State Bar Court (review department) that petitioner Samuel Lipson be suspended from the practice of law for five years, that execution of his suspension be stayed, and that he be placed on probation for five years upon certain conditions including actual suspension from the practice of law for two years and payment of restitution. The recommendation is based on findings of fact and conclusions of law that petitioner borrowed money from two clients without complying with the Rules of Professional Conduct and misappropriated funds of one of those clients from his trust account. Petitioner has not repaid the loans, nor has he returned the misappropriated funds. Petitioner contends several of the review department's findings of fact and conclusions of law are erroneous and the recommended discipline is excessive.

Although we disagree with some of the review department's findings and conclusions, we accept its recommendation as to discipline, with the exception of the amount of restitution to be made as a condition of probation.

## I. FINDINGS AND CONCLUSIONS

Petitioner was admitted to the practice of law in California in 1949 and has been a member of the State Bar since then. He has not been previously disciplined by the State Bar.

Petitioner challenges several of the findings and conclusions of the review department. ■ In attorney discipline matters, we independently examine the entire record and weigh the evidence. (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].) In so doing, we are not bound by the review department's findings of fact or conclusions of law. (*Ibid.*) Petitioner nevertheless bears the burden of showing error in the review department's findings and conclusions. (*Ibid.*)

■ As an initial matter, petitioner challenges the several conclusions of the review department that his purported acts of moral turpitude and violations of the Rules of Professional Conduct also violated Business and Professions Code section 6068, subdivision (a)[1] (section 6068(a)), which states that it is an attorney's duty "to support the Constitution and laws of the United States and of this state." As we stated in *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 816 [263 Cal.Rptr. 798, 781 P.2d 1344], "we are constrained to call to the attention of the State Bar Court the importance of identifying with specificity . . . the manner in which the conduct allegedly violated [a] rule or statutory provision." In each instance here, the review department does not identify with any specificity how petitioner's alleged misconduct violated section 6068(a). Rather, it appears that a violation of section 6068(a) was simply appended to each conclusion that an act of moral turpitude or a violation of the Rules of Professional Conduct had occurred. As in *Baker*, we fail to see how petitioner's alleged misconduct constitutes a violation of section 6068(a). (See also *Bates* v. *State Bar* (1990) 51 Cal.3d 1056, 1059-1060 [275 Cal.Rptr. 381, 800 P.2d 859]; *Sugarman* v. *State Bar* (1990) 51 Cal.3d 609, 617 [274 Cal.Rptr. 246, 798 P.2d 843].) Therefore, we set aside all conclusions of law of the review department stating petitioner violated section 6068(a).

### A. *Count 1—The Firestone Matter*

(1) *Uncontested Facts and Conclusions.* Petitioner was hired by Anne Firestone in June 1984 to represent her in a divorce matter. At the same time, petitioner borrowed $7,500 from Firestone as a short-term loan. At the time of the loan, petitioner gave Firestone a check for $8,250, postdated

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated.

to July 18, 1984, representing principal and interest on the loan. In early July, Firestone loaned petitioner an additional $2,500 in exchange for a second check in that amount, also postdated to July 18, 1984.

Both checks were returned by the bank for insufficient funds. In August 1984, petitioner sent Firestone a check to replace the two returned checks. This check was never deposited because each time Firestone called the bank, she was informed there were insufficient funds. A series of replacement checks given by petitioner to Firestone in September 1984 were also returned for insufficient funds. Petitioner then gave Firestone a promissory note in the amount of $11,000, representing the $7,500 loan plus $750 interest, the second interest-free loan of $2,500, plus an additional $250 in interest, payable October 1, 1984. Numerous attempts to collect on the note were unsuccessful.

The review department concluded petitioner violated former rule 5-101, Rules of Professional Conduct[2] by failing to (1) give Firestone reasonable opportunity to seek advice of independent counsel with respect to the loans, or (2) obtain Firestone's written consent to the loans. Firestone filed suit and obtained an as yet unsatisfied judgment against petitioner in the amount of $14,000.

These facts as found by the review department, and the conclusion based thereon, are uncontested. We conclude substantial evidence supports the review department's action.

(2) *Contested Facts and Conclusions.* ■ Petitioner contests the sufficiency of the evidence supporting the review department's additional findings that when he first sought the loan from Firestone he was having "severe financial problems," and that he failed to disclose these problems to Firestone. He contends that his financial problems at the time of the loan were only "temporary," occasioned by a dishonored check he received from a client, and that he disclosed this fact to Firestone at the time of the loan solicitation.

The record, however, shows that although he disclosed this fact to Firestone, he failed to disclose that he was having other financial problems, including "the usual problems with the payment of living expenses, [and] office rent. . . ." Inability to pay living expenses and office rent would ordinarily be considered "severe financial problems." Both petitioner and Firestone testified that petitioner did not disclose these problems to

---

[2] All further references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The current rules took effect on May 27, 1989, after the misconduct involved here. References to former rules are to those in effect when petitioner's conduct occurred.

Firestone at the time of the loan solicitation. Furthermore, Firestone stated that she did not know petitioner was experiencing these problems when she agreed to the loan. She was only informed of the "temporary" problem resulting from the dishonored check. Therefore, we conclude substantial evidence supports the review department's determination that when petitioner first sought the loan from Firestone, he was having severe financial problems that he failed to disclose to Firestone.

■ Petitioner argues there is insufficient evidence to support the review department's findings that (1) when he solicited the Firestone loan, he had no reasonable belief he could repay the loan, and (2) that he knowingly and falsely represented to Firestone that he was to receive money from several sources from which he could repay the loan. We agree. No evidence was offered by the State Bar that would support these findings. Moreover, as we discuss below, nowhere in the notice to show cause was petitioner charged with making misrepresentations to Firestone. Accordingly, we conclude substantial evidence does not support the findings that when petitioner solicited the Firestone loan, he had no reasonable belief he could repay the loan, and that he knowingly and falsely represented to Firestone that he was to receive money from several sources from which he could repay the loan.

■ Petitioner also challenges the review department's conclusion that "in making false and misleading statements to [Firestone] and misappropriating her money, [he] committed acts of moral turpitude and violated" section 6106.[3] Nowhere in the notice to show cause is there any charge that petitioner either misappropriated Firestone's money or made false or misleading statements to her. To find petitioner culpable based on uncharged misconduct would be a denial of due process. (*Rose* v. *State Bar* (1989) 49 Cal.3d 646, 654 [262 Cal.Rptr. 702, 779 P.2d 761].) Moreover, as discussed above, the findings underlying this conclusion are not supported by the evidence. Therefore, we set aside the review department's conclusion of law that petitioner violated section 6106.

■ Finally, petitioner contests the review department's finding that Firestone suffered emotional trauma from, and underwent psychiatric treatment in connection with, the nonpayment of the loan. Petitioner argues that this finding "grossly overstates" the trauma Firestone suffered as a result of petitioner's actions. The finding states that Firestone "suffered emotional trauma as a result of her loss from the nonpayment of the loan," and that she underwent psychiatric treatment "for this and other unrelated problems." Firestone's undisputed testimony supports the review department's

---

[3] Section 6106 provides, "[t]he commission of any act involving moral turpitude, dishonesty or corruption" constitutes cause for disbarment or suspension.

characterization of the causes of her emotional problems. She acknowledged "going through a lot of trauma" at the time of the nonpayment and that such nonpayment was not the sole reason for the psychiatric treatment. She further testified that the nonpayment of the loan was one in a "sequence of things" causing her grief. We conclude substantial evidence supports this finding of fact.

### B. *Count 2—The Anderson Matter*

(1) *Uncontested Facts and Conclusions.* Petitioner was hired by Ralph Anderson to represent him in connection with leasing a restaurant. On July 25, 1984, petitioner deposited into his client trust account $12,400, representing $8,400 for rent and $4,000 as a security deposit received from Anderson for future payment to the lessor of the restaurant. During the following periods, the balance in petitioner's trust account fell below $12,400: July 26-27, 1984; August 31-September 4, 1984; September 19-21, 1984;[4] and from October 3, 1984 to the present. By the end of October 1984, the client trust account was overdrawn.

On September 6, 1984, petitioner issued a $12,400 check to Anderson's lessor as directed. In early October, the check was presented to the bank by the lessor and returned due to insufficient funds. Petitioner thereafter paid the lessor the $4,000 security deposit by cashier's check. Later that October, petitioner informed Anderson that he was unable to pay the $8,400 in rent due. On November 1, 1984, in order to secure the lease, Anderson personally paid the lessor the $8,400 in rent. Anderson has not received reimbursement from petitioner. The review department concluded that this conduct violated former rule 8-101(B)(4), requiring prompt payment or delivery to a client of requested funds that the client is entitled to receive.

In January 1983, petitioner negotiated a $4,000 loan from Anderson. In July 1984, petitioner negotiated a second loan from Anderson, in the amount of $3,000. Neither loan has been repaid. The review department concluded petitioner violated former rule 5-101 by failing to (1) disclose the terms of the loans in writing in a manner that reasonably should have been understood by Anderson, (2) give Anderson reasonable opportunity to seek advice of independent counsel with respect to the loans, or (3) obtain Anderson's written consent to the loans. Anderson filed suit and obtained an as yet unsatisfied stipulated judgment against petitioner representing both the misappropriated funds and the unpaid loans, plus interest.

---

[4] The balance fell below $12,400 on September 19, 1984, when another client put a stop payment order on a $10,000 check deposited in the trust account immediately after receiving $8,500 in cash from checks written by petitioner and drawn off the $10,000 deposit. Two days later the balance in the trust account again rose above $12,400.

These facts as found by the review department, and the conclusion based thereon, are uncontested. We conclude substantial evidence supports the review department's action.

(2) *Contested Facts and Conclusions.* ██ Petitioner argues that the evidence does not support the review department's finding that he willfully misappropriated the $8,400 he received from Anderson for rent. We disagree. The record shows that the day after petitioner deposited the check received from Anderson, the trust account balance fell below the $12,400 required to be maintained on behalf of Anderson. By August 31, 1984, the balance had fallen to $10,900.[5]

As we noted in *Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 403 [158 Cal.Rptr. 869, 600 P.2d 1326]: "The fact that the balance in an attorney's trust account has fallen below the amount due his client will support a finding of wilful misappropriation." (See also *Murray* v. *State Bar* (1985) 40 Cal.3d 575, 582 [220 Cal.Rptr. 677, 709 P.2d 480].) Although attorneys cannot be held accountable for every detail of office operations, "where fiduciary violations occur as the result of serious and inexcusable lapses in office procedure, [such violation] may be deemed 'wilful' for disciplinary purposes, even if there was no deliberate wrongdoing." (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 795 [205 Cal.Rptr. 834, 685 P.2d 1185].) Petitioner offers no reason for the inadequacy of funds maintained in the trust account prior to September 19, 1984. We conclude that this inadequacy was at best the result of "serious and inexcusable lapses in office procedure." Thus, substantial evidence supports the review department's finding of willful misappropriation.

The review department concluded that by willfully misappropriating his client's funds, petitioner committed an act of moral turpitude and thereby violated section 6106. Petitioner does not contest this conclusion of law; he contests only the underlying finding of willful misappropriation that we uphold. This finding alone supports the conclusion of moral turpitude, and thereby the violation of section 6106. ██ The lack of an evil intent will not immunize an attorney from a conclusion of moral turpitude when the attorney's actions constitute gross carelessness and negligence violating the fiduciary duty to a client. (*Murray* v. *State Bar, supra*, 40 Cal.3d at p. 582.) ██ We conclude substantial evidence supports the conclusion

---

[5]This failure to maintain adequate trust funds occurred prior to September 19, 1984, when the trust fund balance again fell below $12,400 after another client put a stop payment on a check deposited in the trust fund, as discussed above. (See *ante*, p. 1019, fn. 4.) Because, as we discuss below, petitioner's conduct prior to September 19, 1984, constitutes willful misappropriation, we need not address the culpability of petitioner with respect to the stop payment that resulted in the decreased balance on September 19, 1984.

that petitioner committed an act of moral turpitude in violation of section 6106.

## II. DISCIPLINE

The review department found certain evidence in mitigation. Petitioner has no other disciplinary record in over 42 years of practice. His conduct in this matter involves only two clients and was aberrational. He has been candid with the State Bar, has not sought bankruptcy protection, and has shown contrition for his failure to repay the loans. Last, petitioner has practiced without incident during the several years since this misconduct occurred. The review department found no evidence in aggravation. These findings are well supported, and we will not disturb them.

The hearing panel, consisting of a single referee, concluded that petitioner's misconduct warranted disbarment. The review department, by a vote of fourteen to zero, recommended that petitioner be suspended from the practice of law for five years, with execution of suspension stayed, and that he be placed on probation for a period of five years subject to certain conditions including actual suspension of petitioner for two years "and until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and learning and ability in the general law pursuant to Standard 1.4(c)(ii)," and restitution to clients Firestone and Anderson.

■ We accord great weight to the review department's recommendation as to discipline. (*Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1154 [270 Cal.Rptr. 12, 791 P.2d 598].) Petitioner bears the burden of demonstrating that the recommended discipline is erroneous. (*In re Abbott* (1977) 19 Cal.3d 249, 253 [137 Cal.Rptr. 195, 561 P.2d 285].) Nevertheless, we exercise our independent judgment in determining the appropriate level of discipline. (*Howard* v. *State Bar* (1990) 51 Cal.3d 215, 220 [270 Cal.Rptr. 856, 793 P.2d 62].)

■ Petitioner contends that the appropriate level of discipline should not include any period of actual suspension from practice. He asserts the review department's recommendation is excessive in comparison with the discipline imposed in several cases cited. The discipline imposed in similar cases, though relevant, is not conclusive in determining the appropriate discipline here. (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1150 [255 Cal.Rptr. 422, 767 P.2d 689].)

Standard 2.2(a) of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) (hereafter standards) provides that willful misappropriation of entrusted funds shall result in disbar-

ment unless the amount misappropriated is insignificant or the most compelling mitigating circumstances clearly predominate. Moreover, standard 2.2(a) provides that regardless of mitigating circumstances, the discipline in a case of willful misappropriation shall not be less than an actual suspension of one year. ██ We do not, however, follow the standards in a rigid fashion. (*Howard* v. *State Bar, supra,* 51 Cal.3d at p. 221.) The standard's requirement of disbarment in the absence of compelling mitigating circumstances should be viewed as a guideline rather than as an inflexible rule. (See *Edwards* v. *State Bar* (1990) 52 Cal.3d 28, 38 [276 Cal.Rptr. 153, 801 P.2d 396].)

██ Even where the most compelling mitigating circumstances do not clearly predominate, we have recognized extenuating circumstances relating to the facts of the misappropriation that render disbarment inappropriate. In *Edwards, supra,* we said: "As the term is used in attorney discipline cases, 'willful misappropriation' covers a broad range of conduct varying significantly in the degree of culpability. An attorney who deliberately takes a client's funds, intending to keep them permanently, and answers the client's inquiries with lies and evasions, is deserving of more severe discipline than an attorney who has acted negligently, without intent to deprive and without acts of deception . . . . Disbarment would rarely, if ever, be an appropriate discipline for an attorney whose only misconduct was a single act of misappropriation, unaccompanied by acts of deceit or other aggravating factors." (52 Cal.3d at p. 38.)

Although petitioner's misconduct did not involve the deliberate intent and deceit that would require disbarment, his misconduct went beyond a single act of misappropriation. Petitioner also failed to comply with the requirements of former rule 5-101 when he solicited loans from two clients, issued numerous checks on insufficient funds, and failed to make restitution to his clients who suffered substantial harm because of his misconduct.

In light of the seriousness of petitioner's misconduct, we agree with the review department that actual suspension for a significant period of time is necessary to protect the public. The review department's recommendation of two years' actual suspension takes into account both the serious nature of petitioner's misconduct and the substantial evidence in mitigation. Petitioner also challenges, as unjustified and unduly burdensome, the condition that the suspension continue until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice, and learning and ability in the general law pursuant to standard 1.4(c)(ii). We disagree. We conclude this condition is necessary to protect the public. With the exception of the restitution condition of probation discussed below, we adopt the recommendation of the review department.

As a condition of probation, the review department ordered restitution be made to client Firestone in the amount of $14,000, and to client Anderson in the amount of $17,400. Both amounts were to accrue interest beginning October 1, 1984. It appears that the restitution ordered to be made to Firestone represents the unsatisfied judgment that the client recovered against petitioner. As conceded by the State Bar at oral argument, however, it would be improper to accrue interest beginning in 1984, because the judgment of $14,000 presumably included a component representing interest accrued during the period up to the judgment. Moreover, our order of restitution in the Firestone matter is not based on the judgment; rather it is based on the obligation underlying the judgment.

Similarly, it appears that the restitution ordered to be made to Anderson represents the $15,400 owed the client for the misappropriated funds and the unpaid loans, plus interest accrued on that amount during the period up to the stipulated judgment. Our order of restitution in the Anderson matter is also based on the obligation underlying the judgment rather than the judgment itself. Accordingly, we decline to adopt the review department's recommendation as to restitution.

We conclude the proper amount of restitution to be made by petitioner should be calculated as follows: Restitution of $11,000 plus interest from October 1, 1984, should be made to Firestone for the unpaid note for that amount due on that date. Restitution of $4,000 plus interest from January 1, 1983, and $3,000 plus interest from July 1, 1984, should be made to Anderson for the two unpaid loans. Finally, restitution of $8,400 plus interest from November 1, 1984, should be made to Anderson for the unreimbursed rent paid by the client.

### III. DISPOSITION

For the foregoing reasons, we hereby order petitioner Samuel Lipson be suspended from the practice of law for a period of five years, that execution of the suspension be stayed, and that petitioner be placed on probation for a period of five years, on conditions including a period of actual suspension for two years, and until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice, and learning and ability in the general law pursuant to standard 1.4(c)(ii), and the other terms and conditions set forth in the review department's decision with the exception of restitution.

As an additional condition of probation, within the five-year probationary period, restitution of $11,000 plus interest at the rate of 10 percent per annum from October 1, 1984, shall be made to Anne Firestone; and $4,000

plus interest at the rate of 10 percent per annum from January 1, 1983, $3,000 plus interest at the rate of 10 percent per annum from July 1, 1984, and $8,400 plus interest at the rate of 10 percent per annum from November 1, 1984, shall be made to Ralph Anderson.

We further order that petitioner Samuel Lipson comply with the requirements of rule 955 of the California Rules of Court, that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order, and that he take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year of the effective date of this order. We note that under section 6126, subdivision (c), failure to comply with rule 955 of the California Rules of Court may result in imprisonment.

This order is effective on finality of this decision in this court. (Cal. Rules of Court, rule 953(a).)