## In re Anonymous No. 131 D.B. 90

Disciplinary Board Docket No. 131 D.B. 90.

FRIEDMAN, *Member,* September 10, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On November 30, 1990, the Office of Disciplinary Counsel (hereinafter petitioner) filed a petition for discipline against [    ] (hereinafter respondent). Among the misconduct set forth, the petition alleged that respondent had mismanaged, commingled and converted client funds. These actions constituted three separate charges with the following violations of both the Rules of Professional Conduct and the Pennsylvania Rules of Disciplinary Enforcement:

### CHARGE I

(A) RPC 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client;

(B) RPC 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(C) RPC 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation; and

(D) RPC 1.15(b)—Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

### CHARGE II

(A) RPC 1.5(b)—When a lawyer has not regularly represented the client, the lawyer shall communicate the basis or rate of fee, in writing, to the client before or within a reasonable time after commencing representation;

(B) RPC 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in the Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property;

(C) RPC 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct;

(D) RPC 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(E) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules shall be grounds for discipline; and

(F) Pa.R.D.E. 217(c)—Requires a formerly admitted attorney to promptly notify of the transfer to inactive status all persons to whom a fiduciary duty may at any time after the transfer to inactive status and all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing. The responsibility of the formerly admitted attorney to provide such notice shall continue as long as the attorney is on inactive status.

## CHARGE III

(A) RPC 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession

in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be preserved for a period of five years after termination of the representation;

(B) RPC 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Respondent failed to file an answer within the prescribed period of time ending on December 31, 1990.

On January 15, 1991, the matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire.

The hearing was initially scheduled for March 11, 1991. It was, however, rescheduled for April 23, 1991. On August 5, 1991, the Hearing Committee filed its report and recommended that respondent be suspended for a period of three months.

On August 27, 1991, petitioner filed its brief on exceptions which advocated that respondent be suspended for at least one year and one day.

The matter was adjudicated at the September 27, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania adopts and incorporates by reference herein the following findings of fact which have been stipulated

to by the parties and are supported by both documentary and testimonial evidence:

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [    ], was born in 1945. In 1974, he was admitted to practice law in the Commonwealth of Pennsylvania and his office is located at [    ].

## CHARGE I

(3) In April of 1989, [A] retained respondent to represent him in a divorce proceeding filed by his wife, [B], and docketed at [    ] in [    ] County.

(4) On May 1, 1989, [A] executed a fee agreement in which he agreed to furnish respondent with a $500 retainer, as well as to be billed for respondent's representation at a rate of $85 per hour.

(5) A court order dated April 28, 1989, directed the client to, inter alia, file a preliminary inventory and appraisement within 15 days.

(6) On May 2, 1989, [A] transmitted the $500 retainer to respondent and shortly thereafter they discussed the assets held by [A].

(7) Despite this discussion on the client's assets, respondent failed to file an inventory and appraisement on his client's behalf.

(8) By a court order entered on May 25, 1989, respondent was directed to receive and retain in escrow

a $20,000 certificate of deposit titled in the names of both [A] and his father.

(9) Respondent acquired the $20,000 certificate of deposit.

(10) By a court order entered on June 12, 1989, [A] was directed to disburse $370 per month in alimony pendente lite.

(11) On June 26, 1989, [B's] attorney, [C], filed plaintiff's interrogatories and a request for production of documents. Both discovery requests were promptly served upon respondent.

(12) On July 1, 1989, [A] remitted a $59.80 check to respondent in total satisfaction of his bill.

(13) By court order entered on August 9, 1989, [A] was directed to submit answers to the interrogatories and request for production of documents by August 31, 1989. In the event that this order was not complied with, the court indicated that he would be precluded from introducing any evidence at the hearing of [B's] motion for special relief, scheduled for September 6, 1989.

(14) By court order entered on September 6, 1989, [A] was enjoined from challenging [B's] interest in their former residence.

(15) Approximately once a month from April through December 1989, [A] consistently contacted respondent in an effort to urge him to "get things moving."

(16) From January through March 1990, [A] frequently conversed with respondent in regard to his client's divorce. On those occasions in which respondent was available, [A] informed him of his desire to "get things moving."

(17) A decree was entered on March 20, 1990, that finalized [A's] divorce proceedings.

(18) In late April 1990, [A] telephoned respondent's office and left a message that respondent should forward both a final bill for services and the file to [A].

(19) On May 4, 1990, attorney [D] transmitted written correspondence to respondent and requested that respondent relinquish [A's] file as well as the $20,000 certificate of deposit held in escrow. The letter noted that despite [A's] requests for these items for three weeks, respondent had neither communicated with [A] nor relinquished those items.

(20) Having received no response, on May 9, 1990, attorney [D] again corresponded with respondent. [D] again requested that respondent relinquish [A's] file and certificate of deposit or he would be facing possible disciplinary violations.

(21) By letter dated August 22, 1990, attorney [D] notified respondent of her motion to compel respondent to comply with her repeated requests to return [A's] file and $20,000 certificate of deposit.

(22) By a court order entered on August 30, 1990, respondent was directed to promptly return [A's] file, business records, and certificate of deposit within seven days.

(23) Respondent received a copy of this motion along with written correspondence transmitted to him by attorney [D] on August 30, 1990.

(24) Petition for contempt and sanctions:

(a) By letter dated September 11, 1990, attorney [D] wrote to notify respondent that she was filing a petition for contempt and sanctions against him.

(b) The petition for contempt and sanctions for respondent's failure to return the client's file and certificate of deposit, was filed on September 19, 1990.

(c) By a court order entered on September 19, 1990, respondent was held in contempt for violation of the Au-

gust 30th order and he was required to pay attorney [D's] fees in the amount of $300, as well as return the aforementioned items.

(d) By letter dated September 20, 1990, attorney [D] informed respondent of the September 19, 1990, order of court.

(25) On November 9, 1990, attorney [D] presented a petition for issuance of body attachment for respondent's failure to comply with the September 19, 1990, order of court.

(26) Respondent returned the file and certificate of deposit to the Family Division on December 7, 1990.

## CHARGE II

(27) In or about June of 1989, [E] and [F] consulted with respondent in regard to the estate of [G].

(a) [F] was the executrix of the estate of [G].

(b) All the assets of the estate were to be equally divided among the decedent's three children: [F], [H] and [I].

(28) Previously, [E and F] had retained attorney [J], a family friend, to handle administration of the estate. However, attorney [J] suggested that [E and F] retain alternate counsel since he did not have sufficient expertise to handle the estate.

(a) [K], Esquire, consented to fulfill the remainder of the estate's administration.

(b) During the course of events in which attorney [K] became ill, respondent agreed to assist him with the administration.

(c) Thereafter, respondent, on behalf of attorney [K], timely prepared and filed the first and final account for the estate.

(29) [F's] sisters filed an objection to the accounting because they claimed that the sale price of decedent's residence to [E] and [F] was below fair market value.

(30) The sisters had retained attorney [L] of [    ] to represent their interests in this matter.

(31) In or about September 1989, Judge [M] was scheduled to discuss the matter. Due to the fact that no one appeared on behalf of [F's] sisters, Judge [M] assigned the matter to Judge [N].

(32) After advising [E and F] that the objections were separate from the estate's administration, respondent accepted the representation of [F] in regard to the objections.

(33) At a November 11, 1989, meeting all parties convened with Judge [N], at which time [F] agreed to remit $3,500 to her sisters in settlement of their objections.

(a) Respondent was responsible for the preparation of a release outlining the terms of the agreement.

(b) Respondent drafted the release and forwarded it to attorney [L].

(c) The sisters executed it on December 6, 1989.

(34) On December 12, 1989, respondent communicated with [E] by telephone. The following exchange transpired:

(a) Respondent informed [E] that it was imperative for him to transmit the $3,500 settlement;

(b) [E] inquired as to whether respondent had received the executed release from attorney [L];

(c) Respondent stated that he had not yet acquired it; and

(d) [E] informed respondent that he refused to remit the sum to respondent until respondent had possession of the release from attorney [L].

(35) On December 18, 1989, respondent's secretary, [O], telephoned [E] and advised him that the release had been received.

(36) On December 19, 1989, [E] met with respondent and remitted a $3,500 check payable to "Attorney [Respondent] Escrow Account."

(a) Respondent presented [E] with a copy of the sisters' executed release, as well as a copy of a proposed order of court to settle the matter.

(b) Respondent informed [E] that he would forward the funds to attorney [L].

(37) On December 19, 1989, respondent deposited the $3,500 check into his account at [P] Bank captioned "[Respondent], Attorney at Law, Clients Account," numbered [    ].

(38) Respondent failed at that time to forward the $3,500 to attorney [L].

(39) On or about December 23, 1989, a conversation transpired between [E] and respondent, at which time the following occurred:

(a) [E] questioned respondent in regard to his remittance of the $3,500;

(b) Respondent stated that he had not yet forwarded the funds to attorney [L];

(c) Respondent further stated that he was not relinquishing the money because attorney [L] was on vacation until the first of the year. (In fact, attorney [L] was on vacation until January 2, 1990.);

(d) [E] requested that respondent transmit the $3,500 anyway; and

(e) Respondent replied with a refusal to send the funds until attorney [L] had returned to his office.

(40) On January 2, 1990, when [E] contacted respondent he stated that he had not yet forwarded the $3,500 to attorney [L].

(41) On January 9, 1990, [E] again telephoned respondent, at which time:

(a) Respondent declared that attorney [L] had not returned from vacation and that therefore respondent had not yet forwarded the money;

(b) [E] requested respondent to confirm whether [L] had returned from vacation; and

(c) Respondent stated that he would comply.

(42) Meanwhile, attorney [L] had telephoned respondent on January 9, 1990, regarding the relinquishment of the $3,500.

(a) Respondent stated that his secretary was not in the office and that work was accumulating.

(b) Respondent further advised that he would have someone "get to it" by the end of the week.

(c) Respondent failed to contact attorney [L].

(43) On January 22 and 23, 1990, attorney [L] contacted respondent's office.

(a) Both times, attorney [L] was advised that respondent was out of the office.

(b) Both times, attorney [L] left a message requesting that respondent return his calls.

(c) Respondent failed to return attorney [L's] calls.

(44) By letter dated January 12, 1990, [E] transmitted written correspondence to respondent:

(a) [E] expressed his desire to conclude the administration of the estate.

(b) [E] further set up a deadline of January 19, 1990, by which time he demanded that respondent remit the $3,500 funds to attorney [L].

(45) In mid-January a representative from Judge [N's] office telephoned respondent in regard to the satisfaction of the objection, at which time respondent advised that the matter was being processed.

(46) On January 19, 1990, both [E] and attorney [J] contacted respondent's office and were informed that respondent was out of the office. Respondent failed to contact either individual.

(47) By certified letter dated January 23, 1990, and received by respondent's office on January 24, 1990, [E] wrote to respondent to give him a January 30, 1990, deadline to relinquish the $3,500.

(48) On January 26, 1990, a telephone conversation occurred between [E] and respondent in which respondent stated that he would transmit the total funds that day by express mail.

(49) By letter dated January 26, 1990, respondent forwarded $3,500 to attorney [L].

(50) By an order of court entered on January 31, 1990, the court "upon receipt of evidence satisfactory to the court of resolution of all disputes between the parties in interest in the said estate concerning the transfer of and title to certain real estate..." confirmed the conveyance of the property to [E and F].

(51) By letter dated November 29, 1989, Nan M. Cohen, secretary of the Disciplinary Board, advised respondent that he was placed on inactive status for failure to comply with Rule 219, Pa.R.D.E.

(52) As of the date of his petition, respondent had not been transferred to active status.

## CHARGE III

(53) On June 13, 1989, [Q] transmitted a $1,000 check to respondent for the purpose of handling a real estate transaction on behalf of [R].

(54) On June 14, 1989, respondent deposited the check into his client account.

(55) Between October 10, 1989, through January 29, 1990, respondent's client account was continuously out of trust due to the fact that his account balance fell below the amount with which he was entrusted on behalf of his clients.

(56) On September 11, 1989, the balance on respondent's client account fell to $966.26. This amount was $34.74 less than the $1,000 amount with which he was entrusted on behalf of [R].

(57) On October 19, 1989, the balance in respondent's client account still remained $5.26 below the $1,000 amount with which he was entrusted on behalf of [R].

(58) As of November 21, 1989, the balance in respondent's client account was $14.74.

(59) On December 1, 1989, respondent deposited into his account a check in the amount of $9,150 which he had drawn on the account of "[S]."

(a) This $9,150 amount was entrusted to respondent pursuant to a real estate transaction involving [    ] and [    ] [T], and [    ] and [    ] [U].

(b) On December 1, 1989, respondent's client account balance was $9,135.26.

(60) Thereafter, on December 6, 1989, check no. 1236 for the amount of $50, cleared respondent's client account.

(a) This check was payable to respondent.

(b) This check represented respondent's fee in the [T]/[U] matter.

(c) Respondent's entrustment with regard to [T]/[C] was thereby reduced to $9,100.

(61) Throughout December 1989 there was a fluctuation of the amount of funds held by respondent on behalf of his clients in his client account.

(a) As of December 6, 1989, the balance in respondent's client account was $8,949.01.

(b) On December 12, 1989, check no. 1233 in the amount of $4,550 was drawn on behalf of the [T]/[C] matter, and it cleared. This left $4,550 remaining for [T]/[C].

(c) As of December 12, 1989, the balance of the client account was $4,524.01.

(d) On December 13, 1989, check no. 1234 payable to [   ] and [   ] [U] was presented for payment, but was returned due to insufficient funds.

(e) On December 19, 1989, respondent deposited the $3,500 [E and F] check into his client account.

(f) As of December 19, 1989, the balance of respondent's client account was $8,004.01.

(g) On December 26, 1989, a certified check in the amount of $4,550 was drawn from respondent's client account on behalf of the [T]/[U] matter.

(i) This was a replacement check for no. 1234 which had failed to clear earlier.

(ii) This reduced the [T]/[U] funds that were entrusted to respondent to $0.

(h) As of December 26, 1989, the balance in respondent's client account was $3,104.01.

(62) Respondent's client account containing funds entrusted to him by clients continued to fluctuate in January 1990.

(a) On January 3, 1990, check no. 1238 was drawn on behalf of [R] in the amount of $1,000. This disbursement reduced respondent's entrustment on behalf of [R] to $0.

(b) As of January 3, 1990, the balance of respondent's client account was $2,019.01.

(c) On January 26 and 30, 1990, respondent deposited checks totaling $1,524 into the client account.

(i) $300 was by check no. 2729 drawn on respondent's Attorney at Law account at [P] Bank, account no. [    ].

(ii) $600 was by check no. 0129 drawn on respondent's personal account at [V] Bank, account no. [    ].

(d) On January 30, 1990, check no. 1244 in the amount of $3,500 cleared respondent's client account.

(i) This disbursement was on behalf of [E and F].

(ii) This reduced respondent's entrustment on behalf of [E and F] to $0.

(iii) Respondent's total entrustment was then reduced to $0.

(63) Respondent has no objection as to the authenticity of the [P] Bank records regarding his "Attorney at Law, Clients Account" numbered [    ], including bank statements, checks and deposits from June 1989 through January 1990.

## CONCLUSIONS OF LAW

The board has determined that respondent has violated the following Rules of Professional Conduct and Pennsylvania Rules of Disciplinary Enforcement:

## CHARGE I

(A) RPC 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client;

(B) RPC 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(C) RPC 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation; and

(D) RPC 1.15(b)—Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

## CHARGE II

(A) RPC 1.5(b)—When a lawyer has not regularly represented the client, the lawyer shall communicate the basis or rate of fee, in writing, to the client before or within a reasonable time after commencing representation;

(B) RPC 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in the Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property;

(C) RPC 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct;

(D) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules shall be grounds for discipline; and

(E) Pa.R.D.E. 217(c)—Requires a formerly admitted attorney to promptly notify of the transfer to inactive status all persons to whom a fiduciary duty may at any

time after the transfer to inactive status and all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing. The responsibility of the formerly admitted attorney to provide such notice shall continue as long as the attorney is on inactive status.

## CHARGE III

(A) RPC 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be preserved for a period of five years after termination of the representation.

## DISCUSSION

### A. VIOLATIONS

Respondent has violated numerous Rules of Professional Conduct. He has also violated Rules of Disciplinary Enforcement. The Hearing Committee found violations of all charges but for RPC 8.4(c) which states that it is professional misconduct to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Respondent filed no exceptions. Office of Disciplinary Counsel filed exceptions to the recommended disposition.

Office of Disciplinary Counsel also excepted to the Hearing Committee's finding that respondent did not violate RPC 8.4(c). We will limit discussion to those exceptions.

Respondent's client account was continually out of trust from October 10, 1989, through January 29, 1990. During that time period respondent withdrew funds from the account for personal purposes. Respondent also deposited personal funds into the account. The Hearing Committee correctly ruled that respondent violated RPC 1.15(a) by commingling funds. The Hearing Committee further found that respondent had misappropriated funds. However, the Hearing Committee found no violation of RPC 8.4(c) as it found that respondent did not act with fraudulent intent. Rather, the committee found that respondent's actions were the "product of neglect and carelessness."

Misappropriation has been defined as "any unauthorized use of client's funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison,* 461 A.2d 1034, 1036 (D.C. 1983). See also *State ex rel. State Bar v. Veith,* 238 Neb. 239, 470 N.H.2d 549 (1991); *In re Anonymous No. 5 D.B. 80,* 20 D.&C.3d 444 (1981). Most jurisdictions have held that misappropriation occurs whether the attorney's conduct was intentional or unintentional. *In re Vrdolyak,* 137 Ill. 407, 560 N.E.2d 840 (1990); *In re Harrison, supra; Lipson v. State Bar of California,* 281 Cal. Rptr. 775, 810 P.2d 1007, 1011 (1991). ("The fact that the balance in an attorney's trust account has fallen below the amount due his client will support a finding of willful misappropriation.") We agree with the Hearing Committee that respondent misappropriated his client's funds.

The issue which must be determined is whether respondent's misappropriation constituted a violation of RPC 8.4(c). The Supreme Court has interpreted the rule to require a "deviation from the truth" and has directed that the word "dishonesty" not be taken out of context. *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 320, 507 A.2d 1215, 1219-20 n. 7 (1986). The Rules of Professional Conduct define "fraud" as "conduct having a purpose to deceive." See also *Matter of Altomerianos,* 160 A.D. 96, 559 N.Y.S.2d 712 (A.D. 1st Dept. 1990). The board agrees with the Hearing Committee that not every misappropriation constitutes a violation of RPC 8.4(c). *In re Anonymous No. 11 D.B. 88,* 4 D.&C.4th 164, 172 (1989); *In re Anonymous No. 103 D.B. 84,* 38 D.&C.3d 191 (1985). The board further agrees with the Hearing Committee that petitioner has not proven by clear and convincing evidence a violation of RPC 8.4(c). Although respondent did allow the account to fall below the amount of entrusted client funds there was no intent to steal the funds. Funds from the account were used by respondent for personal purposes. Respondent testified, however, that funds were withdrawn under the mistaken belief that there were personal funds in the account together with clients' funds. The Hearing Committee found respondent's explanation to be credible and we will adopt their finding. In addition, no client lost any funds as a result of respondent's actions. We therefore agree with the Committee that although respondent's behavior was totally unacceptable it was the result of negligence and carelessness and not a violation of RPC 8.4(c).

## B. DISPOSITION

The principal function of the disciplinary system is to determine the fitness of an attorney to continue the

practice of law. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). The system "serves to protect the courts and the public from unfit lawyers." *Lucarini, supra,* 472 A.2d at 190.

There is no question but that respondent's conduct is totally unacceptable and must be condemned. Respondent failed to diligently pursue his clients' interests and failed to keep them informed as to the status of their cases. He also failed to promptly return their property and funds in a timely manner and failed to execute a written fee agreement. He did not inform his clients that he had taken inactive status. He also misappropriated client funds.

The Hearing Committee recommended a three-month suspension. Although the board utilizes those findings as a guide, it's review is de novo. *Office of Disciplinary Counsel v. Lucarini, supra.* The board is obligated to conduct de novo review and recommend appropriate discipline.

Respondent was admitted to the bar in February 1974 and has practiced as a sole practitioner for his entire career. Respondent encountered numerous personal difficulties throughout his practice. In 1980 he sought psychological counseling for depression. He subsequently experienced problems with alcohol which led to his admission to an alcohol rehabilitation center in 1984. In 1985 he was separated from his wife and ultimately was divorced in 1988. In 1989 respondent was notified by the board that he had been placed on inactive status. He was readmitted to practice law on March 14, 1991.

The board concurs with the Hearing Committee that respondent's misconduct warrants a suspension from the

practice of law. In determining an appropriate period of suspension the board takes into account respondent's misconduct, evidence of mitigation and respondent's past disciplinary record which includes an informal admonition on September 25, 1986, an informal admonition on May 11, 1987, and a private reprimand on December 9, 1988.

The board concludes that a six-month suspension from the practice of law is warranted. In addition, the board is of the opinion that respondent's practice should be monitored after respondent returns to practice. The board therefore will recommend a consecutive 12-month period of probation during which time respondent shall be required to attend the Pennsylvania Legal Course and be monitored by a practice monitor.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of six months to be followed by a consecutive period of probation. The board further recommends that the respondent be required to select a practice monitor subject to the approval of the Office of Disciplinary Counsel. The practice monitor shall do the following during the period of respondent's period of probation:

(A) Periodically examine respondent's office and escrow accounts, clients' ledgers, and other financial records to ensure that the respondent has appropriately maintained such records and is aware of the proper manner of handling funds and keeping appropriate records pertaining thereto;

(B) Periodically, but not less than once every 60 days, examine the respondent's financial records to ensure con-

tinued compliance with proper handling of funds and maintenance of appropriate records;

(C) Periodically examine the respondent's law office organization and procedures to ensure that the respondent is maintaining an acceptable tickler system, filing system, and other administrative aspects of the respondent's practice;

(D) Meet with the respondent at least monthly to examine respondent's progress towards satisfactory and timely completion of clients' legal matters;

(E) File with the secretary of the board and the Office of Disciplinary Counsel quarterly written reports that the above conditions have been met; and

(F) Immediately report to the secretary of the board any violation by the respondent of the terms and conditions of probation.

The board further recommends that respondent be required to attend the Pennsylvania Legal Practice Course during his period of probation.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Pa.R.D.E. 208(g).

Messrs. Schiller and Paris and Ms. Flaherty did not participate in the adjudication.

### ORDER

And now, September 10, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated January 24, 1992, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of six months to be followed by a 12-month period of probation. Respondent shall select a practice monitor subject to the approval of the

Office of Disciplinary Counsel. The practice monitor shall do the following during the period of respondent's probation:

(A) Periodically examine respondent's office and escrow accounts, clients' ledgers, and other financial records to ensure that the respondent has appropriately maintained such records and is aware of the proper manner of handling funds and keeping appropriate records pertaining thereto;

(B) Periodically, but not less than once every 60 days, examine the respondent's financial records to ensure continued compliance with proper handling of funds and maintenance of appropriate records;

(C) Periodically examine the respondent's law office organization and procedures to ensure that the respondent is maintaining an acceptable tickler system, filing system, and other administrative aspects of the respondent's practice;

(D) Meet with the respondent at least monthly to examine respondent's progress towards satisfactory and timely completion of clients' legal matters;

(E) File with the secretary of the board and the Office of Disciplinary Counsel quarterly written reports that the above conditions have been met; and

(F) Immediately report to the secretary of the board any violation by the respondent of the terms and conditions of probation.

It is further ordered that respondent be required to attend the Pennsylvania Legal Practice Course during his period of probation. Respondent shall comply with the provisions of Rule 217, Pa.R.D.E. and pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.