July 30, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1756

 IN RE: ANTONIO L. CORDOVA-GONZALEZ,
 Appellant.
 

No. 92-8038
 IN RE:

 ANTONIO L. CORDOVA-GONZALEZ,
 Petitioner.

 

 ERRATA SHEET

 The opinion of this court issued on June 30, 1993, is
amended as follows:

 On page 7, line 10: delete the word "his".

July 1, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1756

 IN RE: ANTONIO L. CORDOVA-GONZALEZ,
 Appellant.
 

No. 92-8038

 IN RE: 

 ANTONIO L. CORDOVA-GONZALEZ
 Petitioner.

 

 ERRATA SHEET

 The opinion of this Court issued on June 30, 1993, is
amended as follows:

 On cover sheet caption for No. 92-1756 change the name
"Antenio" to "Antonio".

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1756

 IN RE: ANTONIO L. CORDOVA-GONZALEZ,

 Appellant.

 

No. 92-8038

 IN RE:

 ANTONIO L. CORDOVA-GONZALEZ,
 Petitioner.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Selya and Cyr, Circuit Judges.
 

 

 Antonio Cordova-Gonzalez on brief pro se.
 

 
 June 30, 1993
 

 Per Curiam. Antonio Cordova Gonzalez was disbarred by
 

the United States District Court for the District of Puerto

Rico. Cordova appealed that decision. This court ordered

Cordova to show cause why we should not disbar him as well.

The matters were consolidated. We now affirm the district

court's order, and disbar Cordova from practice before this

court.

 I
 

 Cordova does not seriously dispute the facts as found by

Magistrate Arenas, the committee of lawyers appointed by

Judge Laffitte, and the district court. We agree with the

committee that, with respect to the first charge, involving

the provision of bail on behalf of Cordova's client Irma Cruz

Vazquez, Cordova may not "technically" have violated D.P.R.

Local Rule 401.1(C)(3). The rule prohibits a lawyer from

standing bail for his client, but in this case it appears

that Cordova's wife actually posted the bond, and it was

never conclusively determined that Cordova owned or had an

interest in the property that his wife put up to secure Cruz'

release. This technicality, however, does not absolve

Cordova of all culpability in the matter: the committee found

that Cordova's wife posted bail "under his auspices and with

his express concurrence," and did so by pledging property

that was subject to the jurisdiction of the United States

Bankruptcy Court in bankruptcy proceedings that involved both

 -2-

Mr. and Mrs. Cordova. Cordova therefore connived at an

effort to deceive the district court by obtaining Cruz's

release through the pledge of property that was not the

pledgor's to give, and thus violated ABA Model Rule 8.4(d) by

engaging in conduct that is prejudicial to the administration

of justice.1

 With respect to the second charge, we agree with the

district court that Cordova violated ABA Model Rule 1.8(a)

when he borrowed $100,000 from his client Jose Lopez-Nieves.

Rule 1.8(a) prohibits a lawyer from entering into a business

transaction with a client unless, among other things, the

terms of the transaction are fair and reasonable and "are

fully disclosed and transmitted in writing to the client in a

manner which can be reasonably understood by the client."

Cordova borrowed money from Lopez-Nieves without disclosing

to his client (a) that he did not own the property pledged as

collateral, (b) that his wife -- who did own the collateral -

- and he were involved in bankruptcy proceedings, and (c)

that the collateral was subject to the jurisdiction of the

bankruptcy court, which had not approved the pledge.

 As to the third charge, that Cordova filed pleadings

containing vitriolic slurs on judges and lawyers that were

 

1. The American Bar Association Model Rules of Professional
Conduct govern the conduct of lawyers who practice before the
United States District Court in Puerto Rico. Local Rule
211.4(B).

 -3-

"degrading to the law, the bar and the Court," we will not

repeat Cordova's invective here. We do find the record

adequate legally to support the district court's conclusion

that the pleadings Cordova submitted "show an incessant

incorporation of abusive and disrespectful language against

judges and opposing counsel, replete with offensive and

vituperative statements in contravention of Rules 3.5(c) and

8.4(d) of the Model Rules of Professional Conduct."

 II
 

 We review the district court's decision to disbar

Cordova only for abuse of discretion, In re Grievance
 

Committee of United States District Court, 847 F.2d 57, 61
 

(2d Cir. 1988); In re Evans, 801 F.2d 703, 706 (4th Cir.
 

1986); In re Olkon, 795 F.2d 1379, 1381 (8th Cir. 1986);
 

Standing Committee on Discipline v. Ross, 735 F.2d 1168, 1172
 

(9th Cir. 1984), and we find none here. Cordova is a lawyer

of some thirty years experience, and no stranger to

disciplinary proceedings. See In re Cordova Gonzalez, 726
 

F.2d 16 (1st Cir. 1984); In re Antonio Cordova Gonzalez, 90
 

J.T.S. 28 (P.R. 1990). His dealings with his client Lopez-

Nieves show a lack of consideration for the duty of trust

between lawyer and client that finds expression in Model Rule

1.8(a). Standing alone, such a transgression would warrant

significant punishment. See, e.g., People v. Bennett, 843
 

P.2d 1385, 1387 (Colo. 1993) (lawyer disbarred for borrowing

 -4-

from clients); Lipson v. State Bar, 810 P.2d 1007 (Cal. 1991)
 

(lawyer suspended). Here Cordova's misconduct toward his

client comes accompanied by his misconduct in the Cruz case

and his verbal attacks upon opposing counsel and the court.

Cordova had been warned on at least two occasions, by two

different courts, that further intemperate accusations would

expose him to disciplinary action. He continued to make

vitriolic and, as far as the record shows, unfounded personal

assaults. Attorneys have on a number of occasions been

disbarred for such conduct. See, e.g., In re Evans, 801 F.2d
 

at 706; In re Whiteside, 386 F.2d 805 (2d Cir. 1967); see
 

generally, ABA/BNA Lawyers' Manual on Professional Conduct at
 

101:609 and cases cited therein. We therefore conclude that,

in this case, the punishment is not out of proportion to the

offense.

 III
 

 We reject Cordova's claim that he was denied due process

during the investigation and resolution of the charges

against him. Although attorney discipline proceedings have

been called "quasi-criminal," In re Ruffalo, 390 U.S. 544,
 

550 (1968), the due process rights of an attorney in a

disciplinary proceeding "do not extend so far as to guarantee

the full panoply of rights afforded to an accused in a

criminal case." Razatos v. Colorado Supreme Court, 746 F.2d
 

1429, 1435 (10th Cir. 1984) (quoting People v. Harfmann, 638
 

 -5-

P.2d 745, 747 (Col. 1981)). See also Rosenthal v. Justices
 

of Supreme Court, 910 F.2d 561, 564 (9th Cir. 1990); In re
 

Daley, 549 F.2d 469, 476 (7th Cir. 1977) and cases cited at
 

footnote 6; Fitzsimmons v. State Bar of California, 667 P.2d
 

700, 703-4 (Cal. 1983). Rather, an attorney facing

discipline "is entitled to procedural due process, including

notice and an opportunity to be heard." Rosenthal v.
 

Justices of Supreme Court, 910 F.2d at 564. See also Lowe v.
 

Scott, 959 F.2d 323, 335 (1st Cir. 1992) (due process in
 

proceeding to revoke physician's license requires notice of

the charges and an opportunity to be heard). The record

shows that Cordova received notice of the charges against

him, and had an opportunity to respond to those charges, at

every stage of the proceedings.

 We also reject Cordova's claim that two of the district

court judges who took part in the decision to disbar him

should have refrained from participation. At various times,

Cordova filed six motions to disqualify Judges Laffitte or

Perez-Gimenez.2 However, his subjective impressions of bias

or prejudice, no matter how vehemently expressed, find so

little, and such weak, objective corroboration in the record

that we see no reason to deem the judges' decision to take

part in the disciplinary proceedings an abuse of discretion.

 

2. Several of the motions also sought the disqualification
of Judge Fuste, who recused himself and did not sign the
opinion that disbarred Cordova.

 -6-

See Blizard v. Frechette, 601 F.2d 1217, 1220-21 (1st Cir.
 

1979).

 IV
 

 Under Fed. R. App. P. 46(b), when "it is shown to [a

court of appeals] that any member of its bar has been

suspended or disbarred from practice in any other court of

record . . ., the member will be subject to suspension or

disbarment by the court [of appeals]." "[T]he record of

prior disciplinary proceedings in district court are of

substantial relevance in determining whether an attorney

should be disbarred from practice before" a court of appeals.

In re Evans, 834 F.2d 90, 91 (4th Cir. 1987). Cordova has
 

neither disproved the charges against him, nor explained, as

Rule 46(b) requires, why we should not impose the same

sanction as the district court. Cordova's misconduct in

dealings with his Lopez-Nieves and Cruz, and his flagrant,

repeated disrespect for the tribunals before which he has

practiced, warrant his disbarment.

 The decision of the district court is affirmed. Cordova
 

is disbarred from practice before this court.
 

 -7-